**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**
**Judge Raymond P. Moore**

Civil Action No. 12-cv-01959-RM-KLM

SYLVIA SIMPSON,

      Plaintiff,

v.

CITY OF FOUNTAIN,

      Defendant.

---

**ORDER GRANTING**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF NO. 16)**

---

THIS MATTER is before the Court on Defendant City of Fountain's ("Defendant" or "City") Motion for Summary Judgment (ECF No. 16) on Plaintiff Sylvia Simpson's ("Ms. Simpson") claim that Defendant failed to promote her on the basis of her race, national origin and/or color in violation of Title VII of the Civil Rights Act of 1964 and 42 U.S.C. § 1981. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331. Upon consideration of the Motion, Response, Reply, Court file, and applicable rules, statutes and law, the Defendant's Motion is granted for the reasons stated herein.

## I. LEGAL STANDARD

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Henderson v. Inter-Chem Coal Co., Inc.*, 41 F.3d 567, 569 (10th Cir. 1994). Whether there is a genuine issue of material fact depends upon whether the

evidence presents a sufficient disagreement to require submission to a jury or, conversely, is so one-sided that one party must prevail as a matter of law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248-49 (1986); *Stone v. Autoliv ASP, Inc*., 210 F.3d 1132, 1136 (10th Cir. 2000). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp*., 475 U.S. 574, 587 (1986)). While "the form of evidence produced by a nonmoving party at summary judgment may not need to be admissible at trial, the content or substance of the evidence must be admissible." *Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1210 (10th Cir. 2010) (quotation and italics omitted).

## II.  OVERVIEW

Ms. Simpson was passed over for a promotion to the position held by her supervisor, Doris Fulkerson, upon Ms. Fulkerson's retirement. After Defendant filled the position with a Caucasian woman, Ms. Simpson brought suit alleging she did not get the job because she is Hispanic with brown skin. Defendant contends it has offered a legitimate nondiscriminatory reason for its failure to promote Ms. Simpson – that she was not the most qualified candidate for the position – but that Ms. Simpson has failed to present sufficient evidence such that a reasonable jury could conclude that the proffered reason was pretextual.

## III.  FACTUAL BACKGROUND[1]

### A.  The Hiring of Teresa Frank as Court Administrator.

Ms. Simpson was hired as a court clerk for Defendant's municipal court in 2004.  (ECF No. 12, page 9.)  Ms. Fulkerson was the Court Administrator and Ms. Simpson's supervisor. (ECF No. 12, page 9.)

In December 2007, Defendant hired Scott Trainor as the City Manager.  (ECF No. 12, page 8.)  As City Manager, Mr. Trainor is the hiring manager for all department head positions, including the position of Court Administrator.  (ECF No. 16-1, ¶5.)  His management style vis-à-vis the municipal court is hands off as far as the day-to-day operations, and he could never assume the role of running the court.  (ECF No. 21-1, pages 24-26.)

In 2010, Ms. Fulkerson decided to retire.  (ECF No. 16-7, page142.)  On March 2, 2011, the City posted the Court Administrator position internally and externally.  (ECF No. 12, page 9.)  The hiring and interview panel for the Court Administrator position consisted of Mr. Trainor, Ms. Fulkerson, City Prosecutor Paul Haller, and Chief of Police Todd Evans.  (ECF No. 12, page 10.)  Ms. Simpson and Ms. Frank were among the five finalists interviewed for the position. (ECF 16-5, page 2.)  Following the final interviews, all members of the hiring panel felt that Ms. Simpson was not the strongest candidate.  (ECF No. 16-3; No. 16-6, page 77; No. 16-10; No. 16-11.)  The hiring committee recommended that Mr. Trainor hire Ms. Frank, who was also Mr. Trainor's first choice for the position.  (ECF No. 16-6, pages 54-55.)  In making his decision to hire Ms. Frank, Mr. Trainor relied on Ms. Fulkerson's and Prosecutor Haller's greater

---

[1] Plaintiff denied a number of Defendant's factual statements on the basis that they were "self-serving" but provided no evidentiary support for her denial.  As such, any factual statements (as opposed to argument or legal conclusions) for which evidentiary support has been provided and which were insufficiently controverted by Ms. Simpson are considered undisputed.

3

knowledge of the technical aspects of the municipal court system, but relied on his own views on leadership and communication abilities. (ECF No. 16-6, pages 84-86.)

When Ms. Simpson was not chosen for the position, she filed this lawsuit. Ms. Simpson, however, has no evidence that it was not each panel member's honest opinion that Ms. Frank was the best candidate for the position. (ECF No. 16-9, pages 188-189, 192-193.) She also has no direct evidence that Mr. Trainor did not exercise his independent judgment in selecting the next court administrator. (ECF No. 16-9, page 188.) Instead, Ms. Simpson believes Ms. Fulkerson did not recommend Ms. Simpson for the position due to her national origin, race or color, which belief is based solely on the comments she alleges Ms. Fulkerson made in the past. (ECF No. 16-9, pages 200-201.) Ms. Simpson also believes Ms. Fulkerson could influence the other panel members because they were friendly and had good working relationships. (ECF No. 16-9, pages 184-187.) While Mr. Trainor agrees that Ms. Fulkerson has influence over City officials to a certain degree, he testified it was the same kind of influence City officials have over each other when there is a relationship of mutual trust and respect. (ECF No. 21-1, page 100.) He also stated that Ms. Fulkerson did not act in any way to hurt Ms. Simpson's chances with the rest of the hiring panel and did not pressure the panel not to select Ms. Simpson. (ECF No. 16-12, ¶14.)

### B. Ms. Fulkerson's Disputed Racism.[2]

Carmen Tafoya has been a City employee for 42 years and stopped working with Ms. Fulkerson in 2001. (ECF No. 21-2, pages 43, 94-96, 139-140.) Ms. Tafoya testified that, during

---

[2] The parties generally agree that the evidence concerning Ms. Fulkerson's alleged racism is disputed. (ECF No. 21, pages 7-10; No. 22, pages 3-4.)

the time she worked with Ms. Fulkerson, she observed Ms. Fulkerson making racial comments and engaging in discriminatory conduct.  (ECF No. 21-2, *e.g.*, pages 49-50, 61-62.)  However, she does not know if Ms. Fulkerson engaged in similar behavior in the last 10-12 years.  (ECF No. 21-2, pages 95-96.)  Ms. Tafoya never reported any of Ms. Fulkerson's discriminatory actions to the City.  (ECF No. 21-2, pages 134-136.)

Perla Castro worked for the City from 2003 until 2007.  (ECF No. 21-3, page 29.)  Ms. Castro testified that, during that time period, she observed Ms. Fulkerson making racially discriminatory comments.  (ECF No. 21-3, *e.g.*, pages 47-48, 51.)   She also never reported Ms. Fulkerson's conduct to the City.  (ECF No. 21-3, pages 96-97.)

Ms. Simpson also testified about racial conduct exhibited by Ms. Fulkerson (ECF No. 21-4, pages 110-11, 122, 170), including Ms. Fulkerson's January 19, 2011 statement to Ms. Simpson that she would always have problems with racism and obtaining a supervisory position because of the color of her skin.  (ECF No. 21-4, pages 117-118.)  Ms. Simpson, however, directed the Court to no evidence that the City or Mr. Trainor was aware of such disputed conduct or statement.  (*E.g.,* ECF No. 21, pages 2-12.)

## IV.  ANALYSIS

### A.    The *McDonnell Douglas* Burden-Shifting Framework.

Discrimination claims based on circumstantial evidence are analyzed under the *McDonnell Douglas* three-step burden-shifting framework.[3]  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973); *Johnson v. Weld County, Colo.*, 594 F.3d at 1210-1211; *Antonio v. Sygma Network, Inc.*, 458 F.3d 1177, 1181 (10th Cir. 2006).  First, the plaintiff must make a

---

[3] Both parties agreed this framework applies to Plaintiff's claims.  (ECF No. 16, pages 10-11 & No. 21, page 14.)

prima facie case of discrimination.  Second, the defendant then must articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Third, if the defendant meets its burden of production, the burden shifts back to the plaintiff to prove by a preponderance of the evidence that the employer's reasons are a pretext for unlawful discrimination.  *Johnson v. Weld County, Colo.*, 594 F.3d at 1210-1211.  In determining pretext, the court looks at the facts as they appear to the person making the adverse employment decision.  *Kendrick v. Penske Trans. Serv., Inc.*, 220 F.3d 1220, 1231 (10th Cir. 2000).

In this case, Defendant assumed, without admitting, that Ms. Simpson can establish a prima facie case of race discrimination.  *Cross v. The Home Depot*, 390 F.3d 1283, 1286 (10th Cir. 2004) (setting forth elements).  The issues then are whether Defendant articulated a facially nondiscriminatory reason for its action and, if so, whether Ms. Simpson has shown pretext and overcome the proffered nondiscriminatory reason.

**B.     Defendant's Proffered Reason for Not Promoting Ms. Simpson.**

Defendant's stated reason for not promoting Ms. Simpson is that Ms. Frank was the most qualified person for the position.  "Defendant's burden is one of production, not persuasion; it can involve no credibility assessment."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000) (quotation marks omitted).  As such, Defendant has met its burden of providing a facially legitimate and nondiscriminatory reason for not promoting Ms. Simpson.

6

**C.**     **Ms. Simpson's Arguments.**

Ms. Simpson raises two related arguments as to why Defendant's Motion should be denied.[4]  First, Ms. Simpson argues there are genuine issues of material fact as to whether the racially-biased Mr. Fulkerson was "principally responsible" for Defendant's failure to promote Ms. Simpson, *i.e.*, the cat's paw/rubber stamp theory.  Secondly, she argues pretext may be shown by evidence of Ms. Fulkerson's racial animus toward Ms. Simpson, and other Hispanics and races.

**1.**     **The Subordinate Bias Theory of Liability.**

Under a subordinate bias theory, the employer may be liable, and the proffered nondiscriminatory reason overcome, by evidence that the decisionmaker who made the adverse employment decision merely acted as a rubber stamp, or the "cat's paw," for a subordinate employee's prejudice, even if the decisionmaker lacked discriminatory intent.  *See Kendrick v. Penske Trans. Serv., Inc.*, 220 F.3d at 1231; *EEOC v. BCI Coca-Cola Bottling Co. of Los Angeles*, 450 F.3d 476, 484 (10th Cir. 2006).  *See also Guyton v. Ottawa Truck Div., Kalamar Indus. U.S.A., Inc.*, 15 Fed.Appx. 571, 581 (10th Cir. 2001) (liability may be established if person harboring racial animus is "principally responsible" for adverse action).   The "cat's paw" doctrine derives its name from a fable and the term refers to "one used by another to accomplish his purposes."  *EEOC*, 450 F.3d at 484 (quotation marks omitted).  The "rubber stamp" doctrine refers to a situation where the decisionmaker gives perfunctory approval for an adverse employment action explicitly recommended by a biased subordinate.  *EEOC*, 450 F.3d at 484.

---

[4] Any argument that Ms. Fulkerson was *the* decisionmaker was undeveloped; therefore, it will not be considered. *See Cahill v. American Family Mut. Ins. Co.*, 610 F.3d 1235, 1238-1239 (10th Cir. 2010).

To survive summary judgment on a subordinate bias theory, the plaintiff "must …

establish genuine issues of material fact as to whether the proffered reason for the employment

action is pretextual, which in a subordinate bias claim requires the plaintiff to demonstrate a

causal relationship between the subordinate's actions and the employment decision."[5] *EEOC*,

450 F.3d at 488; *Frederick v. Metropolitan State Univ. of Denver Bd. of Trustees*, 535 Fed.Appx.

713, 718-719 (10th Cir. 2013). "[A] plaintiff must establish more than mere 'influence' or

'input' in the decisionmaking process." *EEOC*, 450 F.3d at 487. An employer is not liable if it

did not rely on any facts from the biased subordinate in ultimately deciding to take an adverse

employment action, even if the biased subordinate first alerted the employer to the plaintiff's

misconduct or shortcomings, as the case may be. *See Lobato v. New Mexico Environ. Dept.*, 733

F.3d 1283, 1295 (10th Cir. 2013). An employer may avoid liability by conducting an

independent investigation of allegations against the employee, as it has taken care not to rely

exclusively on the say-so of the biased subordinate. *EEOC*, 450 F.3d at 488.

In this case, Ms. Simpson has failed to establish a genuine issue of material fact as to

whether Ms. Fulkerson's alleged bias translated into discriminatory action that caused Ms.

Simpson's loss of the promotion to Court Administrator. The undisputed evidence shows a

panel of four individuals on the hiring committee, each of whom interviewed the five finalists

and each of whom determined that Ms. Frank was the most qualified candidate. Even assuming,

*arguendo*, that Ms. Fulkerson's decision was tainted by her alleged discriminatory bias, no

evidence was presented by which a jury could reasonably infer that she influenced the decision

---

[5] The employee must also establish a genuine issue of material fact as to the bias of the subordinate. *EEOC,* 450 F.3d at 488; *Frederick*, 535 Fed.Appx. at 718.

of any other panel member, much less all three panel members, in determining that Ms. Simpson

was not the most qualified. There is similarly no evidence that Mr. Trainor, the only panel

member who undisputedly had the authority to decide who would be selected for the position,

was influenced by Ms. Fulkerson's *determination* that Ms. Simpson was not the most qualified.

While Mr. Trainor relied on Ms. Fulkerson's *and* Prosecutor Haller's greater knowledge of the

technical aspects of the municipal court system, he relied on his own views on leadership and

communication abilities in evaluating the candidates. In short, he did not rely entirely on the

recommendation of a subordinate. Rather, he was a full participant in the hiring process and

made an independent decision. On this record, Ms. Simpson's evidence of general,

unsubstantiated beliefs of Ms. Fulkerson's "influence" are insufficient to create a genuine issue

of material fact.

### 2.    Ms. Fulkerson's Alleged Racial Bias.

"A plaintiff can establish pretext by showing the defendant's proffered non-

discriminatory explanations for its actions are so incoherent, weak, inconsistent, or contradictory

that a rational factfinder could conclude they are unworthy of belief." *Johnson v. Weld County,

Colo.*, 594 F.3d at 1211 (quotation marks and brackets omitted); *see also Antonio v. Sygma

Network, Inc.*, 458 F.3d at 1183. Generally, isolated racial or discriminatory comments are

insufficient to establish pretext unless they are tied to the employment actions in dispute. *See

EEOC,* 450 F.3d at 489. The employee must show the alleged discriminatory actions were

directed at her, her position, or the employer's policy which resulted in the adverse employment

action taken against the employee. *See Johnson v. Weld County, Colo.*, 594 F.3d at 1213.

Ms. Simpson argues that pretext may be inferred from Ms. Fulkerson's alleged racist comments made over the course of many years, especially since Ms. Fulkerson was principally responsible for Defendant's decision to not promote Ms. Simpson.  In this case, there are genuine issues of fact as to the existence of Ms. Fulkerson's alleged racial bias.  Here, there is evidence, albeit disputed, that Ms. Fulkerson exhibited racially bias conduct over many years.  Further, Ms. Simpson testified that on January 19, 2011, after Ms. Fulkerson announced her intention to retire, Ms. Fulkerson stated to Ms. Simpson that she would always have problems with racism and obtaining a supervisory position because of the color of her skin.  As such, Ms. Fulkerson's alleged racial actions are neither isolated nor unrelated to Ms. Simpson's desire to obtain the Court Administrator position.  Accordingly, Ms. Simpson has produced sufficient evidence to create a jury question concerning Ms. Fulkerson's alleged racial animus.

The inquiry, however, does not end here because it is not enough to show there are genuine issues of fact as to whether that Ms. Fulkerson made racial comments.  Instead, to be *material* the discriminatory comments must have been made by the decisionmaker,[6] *see, e.g., Minshall v. McGraw Hill Broadcasting Co.*, 323 F.3d 1273, 1287 (10th Cir. 2003), or, as acknowledged by Ms. Simpson, the person "principally responsible" for the adverse decision, *Guyton,* 15 Fed.Appx. at 581.  But, as discussed above, Ms. Fulkerson was not the person principally responsible.[7]

---

[6] *See* note 4, *supra.*
[7] Plaintiff did not argue the City tolerated such alleged racial conduct in its workplace.  Indeed, such alleged conduct was not reported to the City.

**V.  CONCLUSION**

In sum, Ms. Simpson has failed to present sufficient evidence from which a jury could

properly find that Defendant is liable under the claims alleged.  It is therefore

ORDERED that Defendant's Motion for Summary Judgment (ECF No. 16) is hereby

GRANTED and the complaint and this case are dismissed; and

FURTHER ORDERED that the Clerk of the Court shall enter judgment for the

Defendant and award costs in accordance with Fed.R.Civ.P. 54 and D.C.COLO.LCivR 54.1.

DATED this 19th day of June, 2014.

BY THE COURT:

RAYMOND P. MOORE
United States District Judge